UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE CROSSLEY,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　Defendant. | Case No. 1:21-cv-01686-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 12). |

　　　　This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 6, 7, 8).

　　　　Plaintiff presents the following issues:

1. Whether the ALJ improperly assessed Plaintiff's pain.
2. Whether the ALJ improperly assessed the medical experts' opinions.
3. Whether the ALJ improperly assessed Plaintiff's ability to perform her past relevant work.

(ECF No. 12, p. 2).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

# I. ANALYSIS

## A. ALJ Assessment of Plaintiff's Pain

Plaintiff first challenges the ALJ's decision to the extent it discounted Plaintiff's allegations of pain.

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

The ALJ stated as follows regarding Plaintiff's subjective symptom testimony:

> The claimant testified at hearing that she had to quit her most recent job because of severe back pain. She indicated that, despite medications, injections, and physical therapy, her back pain remains severe. She also discussed significant knee pain. She reported that she spends a typical day alternating between time on her couch and time in her bed. She said that she spends much of this time laying down, and that while she does some sitting, sitting can cause some numbness in the right leg. She testified that she has been prescribed a cane. She reported doing some household chores such as vacuuming, but indicated that she needs significant rest after doing housework for only a brief period.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the

reasons explained in this decision.

. . .

A March 2018 exam showed low back tenderness to palpation and poor range of motion (5F, p. 11). The claimant was prescribed narcotic pain medications (p. 11). Records show the claimant consistently reporting back pain exacerbated by lifting, squatting, walking, and even laying down at night (5F, 7F, 10F). Exam findings remained stable and the claimant remained on these medications through 2018 and 2019 (5F, pp. 17, 23, 29, 35, 41, 47; 7F, p. 5; 10F, pp. 47, 53).

The early 2019 notes also reported mild tenderness to palpation in the bilateral knees (5F, p. 41). A March 2019 x-rays of the claimant's knees showed mild to moderate bilateral tricompartmental degenerative changes (2F).

Early 2020 notes show continued lumbar spine tenderness and reduced range of motion, and also reported severe right knee tenderness and very poor range of motion (10F, pp. 28, 35). By March 2020, the claimant was reporting that she had severe right knee pain and that her knee would give out and cause her to fall (10F, p. 23). She indicated that she could walk no more than 15 minutes at a time (p. 23). Conversely, though, she also apparently reported that she "[w]alks and does work all day long" (10F, p. 9). March 2020 lumbar spine MRI showed a likely disc fragment protrusion at L3 effecting the L3 and probably L4 nerve root, along with slightly larger disc extrusion at the L4-5 level compared to the prior studies (9F, p. 3). April 2020 right knee MRI showed intrasubstance degeneration in the posterior horns of the medial and lateral menisci without a discrete tear (9F, p. 1). Later 2020 exams remained unchanged (10F, p. 6).

. . .

Limitation to the sedentary exertional level with restriction on postural activities is consistent with the imaging showing fairly substantial degenerative spine and knee conditions, complicated by a body mass index above 40. Importantly, though, a conclusion that the claimant could about 6 hours of sitting throughout a workday with some allowance to change positions to alleviate discomfort is also consistent with the record. While the claimant alleged problems with sitting during her hearing testimony, the claimant's treatment notes consistently report complaints of aggravation of the claimant's pain with lifting, walking, squatting, and laying down, but do not show significant complaints about sitting during these visits.

(A.R. 15-16).

Plaintiff argues that the ALJ's rationale improperly relied on boilerplate findings. Plaintiff also argues that the record supports Plaintiff's testimony. The Commissioner, in contrast, argues that the ALJ properly cited evidence that contradicted Plaintiff's symptom testimony, including the records indicating pain with lifting, squatting, walking and even laying

down, but *not* while sitting. Additionally, the Commissioner points to various medical records consistent with the ALJ's conclusion.

The Court finds that the ALJ adequately explained her reasons for not fully crediting Plaintiff's subjective symptom testimony. In particular, the ALJ explained that Plaintiff's allegations of pain while sitting were not consistent with Plaintiff's reports of pain the medical records. The ALJ cited pertinent records that reflected Plaintiff's complaints about pain while standing and other movements, but not while sitting. *See e.g.*, A.R. 313 ("Patient continues to have severe pain with lifting squatting walking laying down at night, hurts to get up and do ADLS."). This omission was especially significant because the ALJ's RFC limited Plaintiff to sedentary work with restrictions. Thus, the RFC already took into account many of Plaintiff's purported limitations. However, the ALJ did not accept Plaintiff's allegations regarding her sitting restrictions. Additionally, as the ALJ noted, in multiple records, Plaintiff reported that she had difficult losing weight even though she "[w]alks and does work all daylong." (*See, e.g.,* A.R. 313, 368).

After consideration, the Court finds that the ALJ's reasons for not fully crediting Plaintiff's symptom testimony were legally sufficient.

### B. ALJ's Assessment of the Medical Experts' Opinions

Plaintiff next argues that the ALJ improperly weighed and evaluated the medical opinion evidence by failing to articulate how persuasive she found all the medical opinions from each doctor and explain how she considered the supportability and consistency factors in reaching its findings.

Because Plaintiff applied for benefits in April 2019, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assignment of "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and

4

"how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

Under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source. . .and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (internal citations omitted). As provided by the regulations,

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.

*Id.* at 791-92 (internal citations omitted).

Keeping these standards in mind, the Court now considers whether the ALJ provided legally sufficient reasons to give more weight to the medical opinions of state agency doctors than Plaintiff's own treating physician, Dr. Rubio. The ALJ evaluated the medical opinions as follows:

> On June 18, 2019, State agency medical consultant L. Kiger, M.D., reviewed the record and evaluated the claimant's physical residual functional capacity (1A). Dr. Kiger noted the (A.R. 15) claimant's back and knee impairments along with the obesity, and opined the claimant was limited to a range of sedentary exertional level work (pp. 6-8). Specifically, Dr. Kiger indicated that the claimant could lift and/or carry 10 pounds occasionally and frequently, that she could stand and/or walk for a total of 2 hours in an 8-hour workday, and that she could sit for about 6 hours in an 8-hour workday (pp. 6-7). Dr. Kiger indicated that the claimant would need a cane for all ambulation and that she "[m]ay alternate sit/stand every 30 minutes for 1 minute as needed to reduce pain" (p. 7). Dr. Kiger stated that the claimant could occasionally climb ramps, stairs, ladders, ropes, and scaffolds (p. 7). Dr. Kiger precluded all balancing and limited the claimant to occasional stooping, kneeling, crouching, and crawling (p. 7). In a July 2019 review, State agency medical consultant A. Nasrabadi, M.D., affirmed Dr. Kiger's assessment.

The State agency consultants' evaluations are persuasive. Dr. Kiger and Dr. Nasrabadi are qualified doctors familiar with Social Security disability regulations. They provided a detailed assessment of the claimant's back, knee, and obesity impairments outlining specific functional limitations that accommodate those impairments. Limitation to the sedentary exertional level with restriction on postural activities is consistent with the imaging showing fairly substantial degenerative spine and knee conditions, complicated by a body mass index above 40. Importantly, though, a conclusion that the claimant could about 6 hours of sitting throughout a workday with some allowance to change positions to alleviate discomfort is also consistent with the record. While the claimant alleged problems with sitting during her hearing testimony, the claimant's treatment notes consistently report complaints of aggravation of the claimant's pain with lifting, walking, squatting, and laying down, but do not show significant complaints about sitting during these visits. For these reasons, the undersigned finds the assessments by Dr. Kiger and Dr. Nasrabadi persuasive, and the residual functional capacity adopted in this decision has largely been informed by these evaluations.

A July 2019 physical residual functional capacity evaluation by Agustin Rubio, M.D., is less persuasive (6F). Dr. Rubio noted the claimant's back pain and opined to a far more limited functional capacity. Dr. Rubio suggested that the claimant could rarely lift or carry even 5 pounds (pp. 1-2). Dr. Rubio indicated that the claimant could not walk even one city block without pain or rest, that she could sit less than 1 hour in an 8-hour workday, that she could stand or walk less than 1 hour in an 8-hour workday, and that she would need to lie down for about 3 hours in an 8-hour workday (p. 2). Dr. Rubio indicated that she would be constantly unable to concentrate due to pain and stress and that she would be off task more than 30 percent of a workday (pp. 3-4). Dr. Rubio also suggested that the claimant would miss work more than 5 days per month (p. 4). While, as noted above, significant limitations and reduction to sedentary level activities are warranted by the claimant's impairments, the more extreme limits suggested by Dr. Rubio are not consistent with the record as a whole. As noted above, treatment record do not show prominent complaints about sitting, and an inability to sit even 1 hour in an 8-hour day is not consistent with the records. The ability to rarely lift even 5 pounds is also inconsistent with the claimant's own reports that she is able to do at least some household chores including some vacuuming. Dr. Rubio also suggested an inability to handle or finger more than 50 percent of a workday and an inability to reach even 10 percent of a workday, limitations that are not supported by evidence of upper extremity complaints or a severe upper extremity impairment.

Dr. Rubio failed to provide any support for the number of days to which he opined the claimant would be absent from work or off task. For all of these reasons, Dr. Rubio's opinion is not substantially consistent with the evidence of record as a

> whole, and Dr. Rubio's opinion is less persuasive than the opinions from the State agency medical consultants. Considering the claimant's activities of daily living and previous work activity, the treatment records, the State agency consultants' physical residual functional capacity assessment findings, the opinion evidence from Dr. Rubio, and the subjective complaints and hearing testimony of the claimant, the undersigned finds that the claimant's limitations are not fully disabling, and that the claimant retains the capacity to perform work activities with the limitations set forth above.

(A.R. 15-17).

As reflected in these passages, the ALJ articulated how she considered the medical opinions and how persuasive she found them.  She also explained explain how she considered the supportability and consistency factors' in reaching these findings.  In particular, she explained that the state agency opinions were consistent with Plaintiff's complaints in the medical records of pain during various activities, but not specifically during sitting.  Additionally, the ALJ explained that certain of Dr. Rubio's proposed limitations were more extreme than supported by the record.  For example, Dr. Rubio assessed handling and reaching limitations despite evidence of upper extremity complaints.  While Plaintiff argues that the ALJ should have merely declined to accept the portions of his opinion the ALJ found unpersuasive, the ALJ was not required to do so especially in light of contradictory medical opinions.  It was appropriate for the ALJ to assess the supportability of Dr. Rubio's opinion as a whole in evaluating the weight to give such opinions.

Accordingly, the Court finds no error in the ALJ's assessment of the medical opinions.

### C. The ALJ's Assessment of Past Relevant Work

Finally, Plaintiff argues that the ALJ did not consider Plaintiff's ability to stay on task in the course of an eight-hour workday because Plaintiff's pain levels precluded her from full-time employment.  Plaintiff argues again that the RFC should have included further limitations on sitting.

The Court finds no error here.  Plaintiff's argument is an extension of her earlier arguments regarding the ALJ's treatment of Plaintiff's subjective symptom testimony and medical opinions.  Plaintiff does not argue that the ALJ lacked substantial evidence for the RFC, or that Plaintiff's past work is incompatible with the RFC as formulated.  Accordingly, the Court

finds no legal error in the ALJ's assessment of past relevant work.

## II. CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed, and the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **January 6, 2023**          /s/ Erica P. Grosjean
                                    UNITED STATES MAGISTRATE JUDGE